```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                Civil No. 07-4086(DSD/JJG)
```

Equal Employment Opportunity
Commission,

        Plaintiff,

v.                                         **ORDER**

Ceridian Corporation,

        Defendant.

    Jean P. Kamp, Esq., EEOC, 500 West Madison Street, Suite 2000, Chicago, IL 60661 and Nicholas J. Pladson, Esq., EEOC, 330 Second Avenue South, Suite 720, Minneapolis, MN 55402, counsel for plaintiff.

    R. Scott Davies, Esq., David A. Schooler, Esq., Michael C. Wilhelm, Esq. and Briggs &Morgan, P.A., 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, counsel for defendant.

    This matter is before the court upon plaintiff the Equal Employment Opportunity Commission's ("Commission") motion for voluntary dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), and defendant Ceridian Corporation's ("Ceridian") request for attorney's fees. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants the Commission's motion and denies Ceridian's request.

## BACKGROUND

This employment dispute arises out of Ceridian's termination of Dr. James Shelton ("Shelton"). Ceridian provides human resource services. Shelton, an African-American, began work as a OneSource consultant at Ceridian on October 18, 1998, counseling customers on emotional and physical health issues. Ceridian placed Shelton on a performance improvement plan ("PIP") in July 2004, and terminated his employment on September 14, 2004. On June 23, 2005, Shelton filed a charge of discrimination with the Commission, alleging that Ceridian's actions were racially motivated.

Ceridian produced documents requested by the Commission on August 11, 2005. These documents included Shelton's 2004 PIP and the personnel files of three Caucasian employees, Lisa Stellrecht ("Stellrecht"), Mary Vraney ("Vraney") and Melissa Rubel ("Rubel"), all of whom had performed the same job with the same supervisors as Shelton. (Schooler Aff. Ex. 5.) The Commission issued a probable cause determination on September 18, 2006. After receiving a response from Ceridian, the Commission filed a complaint in federal district court on behalf of Shelton on September 26, 2007, asserting claims of racial discrimination and retaliation against Ceridian pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

Ceridian disclosed numerous documents to the Commission during discovery, including a copy of Shelton's 2001 PIP. (Id. Exs. 13-

14.) After deposing Shelton on October 31, 2008, Ceridian moved for summary judgment on January 5, 2009. On January 29, 2009, the Commission moved for voluntary dismissal. During oral arguments on February 20, 2009, Ceridian withdrew its motion for summary judgment and stipulated to the Commission's motion for voluntary dismissal with prejudice. Ceridian now argues that it is entitled to attorney's fees dating back to September 26, 2007.

## DISCUSSION

Parties to a lawsuit generally must bear their own costs. See Advantage Media LLC v. City of Hopkins, 511 F.3d 833, 836 (8th Cir. 2008). Congress, however, provided in section 706(k) of the Civil Rights Act that, "[i]n any action or proceeding under this title, the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee." See 42 U.S.C. § 2000e-5(k). The court must first determine whether a defendant is a prevailing party for purposes of section 706(k). See Marquart v. Lodge 837, Int'l Assoc. of Machinists, 26 F.3d 842, 852 (8th Cir. 1994). Once a prevailing defendant is identified, the court considers whether the plaintiff's action was "frivolous, unreasonable or groundless, or [if] the plaintiff continued to litigate after it clearly became so." Williams v. City of Carl Junction, 523 F.3d 841, 843 (8th Cir. 2008) (citing Hughes v. Rowe, 449 U.S. 5, 14 (1980) (per curiam)).

3

**A. Prevailing Defendant**

A defendant is a prevailing party if it obtained "a judicially-sanctioned material alteration of the legal relationship between the parties to the lawsuit." Advantage Media, 511 F.3d at 837 (citing Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604-05 (2001)); see also Mr. L v. Sloan, 449 F.3d 405, 407 (2d Cir. 2006) (applying Buckhannon to defendants); Claiborne v. Wisdom, 414 F.3d 715, 719 (7th Cir. 2005) (same). Enforceable judgments on the merits or settlement agreements enforced through consent decrees meet this standard. See Advantage Media, 511 F.3d at 837 (citing Buckhannon, 532 U.S. at 603-04).

In this case, the court's order granting the Commission's motion for voluntary dismissal with prejudice is a judicially-sanctioned enforceable judgment on the merits. See Claiborne, 414 F.3d at 719 (voluntary dismissal with prejudice is decision on merits). The order materially alters the legal relationship between the Commission and Ceridian by terminating any claims arising out of the underlying operative set of facts and allowing preclusion defenses in future litigation. Cf. Christina A. ex rel. Jennifer A. v. Bloomberg, 315 F.3d 990, 993-94 (8th Cir. 2003) (voluntary dismissal without prejudice did not materially alter parties' legal relationship). Therefore, Ceridian is a prevailing defendant.

### B. The Commission's Action

A prevailing defendant "is entitled to attorney's fees only in very narrow circumstances." See Marquart, 26 F.3d at 852. A plaintiff's allegations are not frivolous, unreasonable or groundless merely because they prove, upon careful examination, to be "legally insufficient to require a trial." Williams, 523 F.3d at 843 (citing Hughes, 449 U.S. at 14). "Rather, so long as the plaintiff has some basis for [its] claim, a prevailing defendant may not recover attorney's fees." Id. (quotation omitted). In other words, the court will not engage in "'post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, [its] action must have been unreasonable or without foundation.'" Id. (quoting Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421-22 (1978)).

Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). To make out a claim of race discrimination, the Commission had to demonstrate that (1) Shelton is a member of a protected class, (2) he was meeting the legitimate expectations of his employer, (3) he suffered an adverse employment action and (4) similarly situated employees outside the protected class were treated differently. See Fields v. Shelter Mut. Ins.

5

Co., 520 F.3d 859, 864 (8th Cir. 2008). Ceridian argues that the Commission knew long before it filed the complaint that it could not show that Shelton was meeting Ceridian's legitimate expectations or that Ceridian treated other similarly situated employees differently. Ceridian also alleges that the Commission continued to pursue litigation after evidence produced during discovery indicated the case was groundless.

**1. Pre-Complaint Period**

Ceridian first argues that based on the documents it produced to the Commission on August 11, 2005, the Commission knew that Shelton was fired for his poor work performance and that similarly situated Caucasian employees were disciplined or terminated for the same reason. Specifically, Ceridian maintains that the 2004 PIP referenced another PIP prepared for Shelton in 2001, thus indicating that Shelton's work performance problems were ongoing and unresolved. Furthermore, Ceridian contends that the personnel files showed that Stellrecht, Vraney and Rubel were also placed on PIPs and later terminated or disciplined.

In response, the Commission argues that the 2004 PIP contained only "an opaque reference" to the 2001 PIP. The first sentence of the 2004 PIP, however, referenced the 2001 PIP, and the remainder of the first paragraph described the 2001 PIP and Shelton's alleged failure to meet Ceridian's requirements:

> You were presented with a PIP on August 2001. The issues outlined in that PIP were that you

> meet the productivity and quality standards of
> the OneSource consultants and document cases
> according to Ceridian's policy and procedures.
> On February 2004, you had a discussion with a
> clinical supervisor regarding documentation
> and referral process issues. Deficiencies
> still exist despite efforts to correct the
> problems. Your performance is not yet
> acceptable. The purpose of this memo is to
> ensure that you understand what is expected of
> you and the possible consequences of not
> meeting the conditions of the PIP.

(Schooler Aff. Ex. 7.) Nevertheless, the Commission contends that it learned the full details of Shelton's work performance history and that the 2001 PIP was created and administered by two African-American supervisors only after Ceridian disclosed the 2001 PIP in April 2008. (Def.'s Mem. at 8-9.) Once it received that information, the Commission determined that "the fact that the 2001 PIP was initiated for similar reasons as the 2004 PIP lessened the impact of the 2004 PIP in the [Commission's] case." (Id. at 9.)

The Commission also argues that the information Ceridian provided on Stellrecht, Vraney and Rubel either could not be corroborated or was not true. The Commission alleges that Ceridian never confirmed that Vraney was placed on a PIP, later stated that Stellrecht was not subject to a PIP and gave the Commission an unsigned copy of Rubel's PIP but indicated that she resigned before receiving it. (Pladson Decl. Ex. 3.) According to the Commission, these shifting explanations caused it to question Ceridian's truthfulness. Furthermore, the Commission's own comparison of Shelton's work with that of similarly situated Caucasian employees

7

indicated that Shelton's work of similar quality was more often criticized by Ceridian supervisors. (Id. Exs. 1-2.)

In consideration of this evidence, the court determines that the Commission had some basis for its discrimination claim after Ceridian's August 11, 2005, disclosures. Fact issues concerning the details of Shelton's work performance history, the similarity between the 2001 and 2004 PIPs and the validity of those critiques remained unresolved. Furthermore, conflicting evidence existed concerning whether Ceridian treated similarly situated Caucasian employees the same as Shelton. These contested issues created a colorable argument that Ceridian discriminated against Shelton, and the Commission's complaint was not frivolous, unreasonable or groundless. See Williams, 523 F.3d at 844 (no attorney's fees because case presented colorable argument); Davis v. City of Charleston, 917 F.2d 1502, 1505 (8th Cir. 1990) (no attorney's fees when unresolved fact issues exist); E.E.O.C. v. Kenneth Balk & Assoc. Inc., 813 F.2d 197, 198 (8th Cir. 1987) (same).

### 2. Post-Complaint Litigation

Ceridian next argues for attorney's fees because the Commission needlessly continued to litigate after discovering evidence that the case had no merit. According to Ceridian, once the Commission received Shelton's 2001 PIP in April 2008, it became fully aware that Shelton was terminated for ongoing performance problems instead of his race. As noted earlier, the Commission

acknowledged that the 2001 PIP weakened its case. According to the Commission, however, an internal email and testimony of a Ceridian supervisor suggested that Ceridian's performance review process produced inconsistent results. (Pladson Decl. Exs. 8-9.) Furthermore, Ceridian still had not produced credible evidence that it treated similarly situated Caucasian employees the same as Shelton. While the Commission's evidence ultimately proved unpersuasive, it provided some basis for its claim. See Williams, 523 F.3d at 844 (no attorney's fees after summary judgment for defendants).

Finally, Ceridian maintains that by the date of Shelton's deposition the Commission was aware that its case was groundless. Specifically, Ceridian alleges that at his deposition Shelton acknowledged he was subject to the 2004 PIP due to performance related problems that had existed since 2001, not because of discrimination. Shelton testified, however, that while the 2001 PIP had "some validity," was generally "done in a fair manner" with a few exceptions and that he "didn't believe [the 2001 PIP was] discriminatory," the 2004 PIP "had little or no validity." (Schooler Aff. Ex. 17 at 65-69). Shelton, therefore, did not agree that the 2004 PIP was a result of his work performance. Furthermore, a fact issue remained as to whether similarly situated Caucasian employees were treated differently than Shelton. Therefore, the court determines that the Commission had some basis

9

for pursuing its discrimination claim after October 31, 2008, and denies Ceridian's request for attorney's fees.

**CONCLUSION**

Accordingly, based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that the Commission's motion for voluntary dismissal [Doc. No. 34] is granted and Ceridian's request for attorney's fees is denied.
**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  May 26, 2009

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court